UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


DREW C. HARTLEY

     Petitioner,

v.                                     Case No. 8:08-cv-854-T-23TBM

SECRETARY, Department of Corrections,

     Respondent.

_____/

## O R D E R

     Drew C. Hartley petitions for the writ of habeas corpus pursuant to 28

U.S.C. § 2254 (Doc. 1) and challenges the validity of his two state convictions for

cocaine possession.  Hartley alleges several claims of ineffective assistance of trial

counsel and challenges the validity of his *nolo contendere* plea.  Numerous exhibits

("Respondent's Exhibit __") support the response.  (Doc. 44)

## FACTS[1]

     Hartley was charged in two separate state cases (Case Nos. CRC

01-07257CFANO and CRC 01-07687CFANO) with possession of cocaine.

Hartley entered a *nolo contendere* plea to both charges and was sentenced to

---

[1] This factual summary derives from the state court record and the state post-conviction court's
order rejecting Hartley's state Rule 3.850 motion.  (Respondent's Exhibits 2, 34)

concurrent three-year terms of drug offender probation.[2]  Subsequently, Hartley

violated his probation and, after a revocation hearing, was sentenced to a

concurrent term of five years imprisonment in each case.

## I.     EXHAUSTION & PROCEDURAL DEFAULT

**Grounds Two, Three, and Four**

In ground two Hartley contends that the State breached the plea agreement

by refusing to allow Hartley to participate in the Veterans Administration drug

treatment program once the State knew that Hartley could not complete the

Salvation Army program.[3]  Hartley alleges that this breach violated his Fifth,

Sixth, and Fourteenth Amendment rights under *Brady v. United States*, 404 U.S. 257

(1970)*,* and *Santobello v. New York*, 397 U.S. 742 (1970).  In ground three Hartley

contends that his trial counsel rendered ineffective assistance by not informing

Hartley of his appellate rights resulting in a deprivation of both his right to counsel

at a critical stage of the proceedings and the opportunity to file both a timely direct

appeal and a timely motion to withdraw plea.  In ground four Hartley contends

that the state trial judge violated Hartley's Sixth and Fourteenth Amendment

---

[2]  The order of drug offender probation in each case specifically requires Hartley to enter and successfully complete a six-month Salvation Army residential drug treatment program. (Respondent's Exhibit 2)

[3]  Hartley and his probation officer ultimately learned that the Salvation Army program does "not accept anyone who is court-ordered to complete their treatment."  (Respondent's Exhibit 36, p. 35)

rights by inducing an involuntary plea.[4]  The respondent correctly argues Hartley's

failure to exhaust these grounds in the state courts precludes federal review.

Before a federal court may grant habeas relief, a federal habeas petitioner

must exhaust every available state court remedy for challenging his conviction,

either on direct appeal or in a state post-conviction motion.  28 U.S.C.

§ 2254(b)(1)(A), (C); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  "[T]he state

prisoner must give the state courts an opportunity to act on his claims before he

presents those claims to a federal court in a habeas petition."  *Boerckel*, 526 U.S. at

842.  *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state

prisoner seeking federal habeas relief cannot raise a federal constitutional claim in

federal court unless he first properly raised the issue in the state courts.") (citations

omitted)).  A federal habeas petitioner "shall not be deemed to have exhausted the

remedies available in the courts of the State . . . if he has the right under the law of

the State to raise, by any available procedure, the question presented."  *Pruitt v.*

*Jones*, 348 F.3d 1355, 1358 (11th Cir. 2003).

---

[4]  Hartley in ground four fails to present facts substantiating his allegation:

> Ground four:  Trial judge violated 14th and Sixth Amendment of U.S. Constitution (induced
> involuntary plea).
>
> . . . .
>
> See pages 21-25 and three supporting memorandums [sic] of law.

(Doc. 1, p. 9)  Notwithstanding, Hartley failed to present this federal claim to the state court on
direct appeal or in a state post-conviction motion.

A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt*, 348 F.3d at 1358-59 (quoting *Boerckel*, 526 U.S. at 845). To exhaust a claim, a petitioner must present the state court with the particular legal basis for relief in addition to the facts supporting the claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

Hartley in his reply "denies that grounds two, three, and four are procedurally barred," and that he "fairly presented the substance of each of his claims to the states courts. . . ." (Doc. 56, p. 2) The requirement that a federal habeas corpus petitioner exhaust available state court remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court, alerting that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A petitioner

must "do more than scatter some makeshift needles in the haystack of the state court record." *McNair v. Campbell,* 416 F.3d at 1302-03 (quotations and citations omitted). A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese,* 541 U.S. 27, 32 (2004).

Hartley did not present to the state post-conviction court or the state appellate court a substantive federal constitutional claim based upon the allegations presented in grounds two, three,[5] and four of this federal petition. Hartley's failure to present the federal component of these grounds deprived the state court of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. at 845. A federal court cannot grant a Section 2254 petition unless the petitioner has exhausted every available state court remedy. *Snowden v. Singletary*, 135 F.3d at 735. Hartley's failure to present his federal grounds to the state court leaves the exhaustion requirement unsatisfied. *Duncan v. Henry*, 513 U.S. at 365. *See also Baldwin v. Reese*, 541 U.S. 27, 32 (2004) ("A litigant

---

[5] Hartley alleges that he presented the ineffective assistance claim asserted in ground three to the state courts in his state Rule 3.800 motion to correct an illegal sentence, in his state Rule 3.850 motion to vacate, and in his *pro se* motion to withdraw plea. Although Hartley mentioned supporting facts for this ground in each of his state motions, he did not present this particular ineffective assistance claim as an independent substantive ground for relief. Even assuming exhaustion, Hartley cannot obtain relief because he fails to establish either deficient performance or resulting prejudice. This failure to satisfy *Strickland's* requirements precludes federal relief.

wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"). Consequently, grounds two, three, and four are procedurally defaulted.

Pursuant to the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). In other words, he must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a

fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000);

*Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an

extraordinary case where a constitutional violation has probably resulted in the

conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327

(1995); *Glenn*, 353 F.3d at 892. This exception requires a petitioner's "actual"

innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet

this standard, a petitioner must show a reasonable likelihood of acquittal absent

the constitutional error. *Schlup*, 513 U.S. at 327.

Hartley demonstrates neither cause and prejudice excusing his default nor a

fundamental miscarriage of justice. *See Smith*, 256 F.3d at 1138. Consequently,

grounds two, three, and four are procedurally barred from federal review.

## II.     MERITS

Hartley's remaining claim is exhausted and entitled to review on the merits.

### Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th

Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a

highly deferential standard for federal court review of state court adjudications,

states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect

to any claim that was adjudicated on the merits in State court proceedings
unless the adjudication of the claim–

>   (1) resulted in a decision that was contrary to, or involved an
>   unreasonable application of, clearly established Federal law,
>   as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable
>   determination of the facts in light of the evidence presented
>   in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court

interpreted this deferential standard:

>   In sum, § 2254(d)(1) places a new constraint on the power of a federal
>   habeas court to grant a state prisoner's application for a writ of habeas
>   corpus with respect to claims adjudicated on the merits in state court.
>   Under § 2254(d)(1), the writ may issue only if one of the following two
>   conditions is satisfied--the state-court adjudication resulted in a decision
>   that (1) "was contrary to . . . clearly established Federal Law, as
>   determined by the Supreme Court of the United States," or (2) "involved
>   an unreasonable application of . . . clearly established Federal law, as
>   determined by the Supreme Court of the United States."  Under the
>   "contrary to" clause, a federal habeas court may grant the writ if the state
>   court arrives at a conclusion opposite to that reached by this Court on a
>   question of law or if the state court decides a case differently than this
>   Court has on a set of materially indistinguishable facts.  Under the
>   "unreasonable application" clause, a federal habeas court may grant the
>   writ if the state court identifies the correct governing legal principle from
>   this Court's decisions but unreasonably applies that principle to the facts of
>   the prisoner's case.

"The focus . . . is on whether the state court's application of clearly

established federal law is objectively unreasonable, . . . an unreasonable

application is different from an incorrect one." *Bell v. Cone*, 535 U.S. at 694.  *See*

*Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective

reasonableness, not the correctness *per se*, of the state court decision that we are to

decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Federal courts must afford due deference to a state court's decision. "AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, ____ U.S. ____, 130 S. Ct. 1855, 1866 (2010).

Hartley bears the burden of overcoming a state court factual determination by clear and convincing evidence. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact, but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

## Standard for Ineffective Assistance of Counsel claims

*Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective

assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled
> and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct.
> 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test
> for analyzing ineffective assistance of counsel claims. According to
> *Strickland*, first, the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors so serious that
> counsel was not functioning as the "counsel" guaranteed the defendant by
> the Sixth Amendment. Second, the defendant must show that the deficient
> performance prejudiced the defense. This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial, a trial
> whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent

prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an

ineffective assistance claim . . . to address both components of the inquiry if the

defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305

("When applying *Strickland*, we are free to dispose of ineffectiveness claims on

either of its two grounds."). "[C]ounsel is strongly presumed to have rendered

adequate assistance and made all significant decisions in the exercise of reasonable

professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual

ineffectiveness claim must judge the reasonableness of counsel's challenged

conduct on the facts of the particular case, viewed as of the time of counsel's

conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the

circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Hartley must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691-92. To meet this burden, Hartley must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91. Hartley cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial

lawyers, in every case, could have done something more or something different.

So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is

prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*)

(quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  *See also Jones v. Barnes*, 463

U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

**Ground One**

  Hartley contends that his trial counsel rendered ineffective assistance by

misadvising Hartley about both the strength of the prosecution's case and his

eligibility for a Salvation Army drug treatment program.  Hartley claims that the

misadvice resulted in his entering both an involuntary plea and an involuntary

waiver of his right to appellate review of two motions to dismiss (the "C-4

motions").[6]  Hartley argues that absent the erroneous advice, he "would have

certainly proceeded to trial . . . been acquitted in both trials either by directed

---

[6]  Hartley's counsel filed two pre-trial motions to dismiss pursuant to Fla. R. Crim. P. 3.190(c)(4) which provides:

  (c)  Unless the court grants further time, the defendant shall move to dismiss the indictment or information either before or at arraignment.  The court in its discretion may permit the defendant to plead and thereafter to file a motion to dismiss at a time to be set by the court. Except for objections based on fundamental grounds, every ground for a motion to dismiss that is not presented by a motion to dismiss within the time hereinabove provided shall be considered waived.  However, the court may at any time entertain a motion to dismiss on any of the following grounds:

  . . . .

    (4)  There are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt against the defendant.

verdicts through motions for judgment of acquittal or not guilty jury verdicts [and]

then been able to enter into the Salvation Army facility." (Doc. 1, p. 33)

A.    Ineffective assistance of counsel

      The state post-conviction court rejected Hartley's ineffective assistance

claim:

> Within [Hartley's] motion to withdraw plea, the Defendant alleges that counsel "deceived and lied to" the Defendant about the "strength of the case . . . lost interest in working on the case, and only wanted a plea." He also alleges that "the attorney did not present argument to the court on the merits to [sic] motion to withdraw plea." As to these allegations, the court finds that they lack sufficient factual allegations and are vague, conclusory, and facially insufficient. Such conclusory allegations fall short of meeting the Defendant's burden of establishing deficient performance and prejudice. . . . This portion of ground one is denied.

> The Defendant also contends that counsel misled him to believe that he could appeal the court's ruling on a [R]ule 3.190(c)(4) [motion] and he further alleges this is supported by the record of the August 22, 2002, sentencing hearing. The record reflects that this issue was thoroughly addressed at the sentencing hearing. After raising this issue with the court, the court gave counsel and the Defendant time to speak off the record. When they finished, counsel told the court that after discussing all the pros and cons of what they may or may not do, the Defendant did not wish to preserve any issue as far as the C-4 motion for purposes of appeal and that it was the Defendant's desire to resolve the case as discussed there that day. The court asked the Defendant if what counsel said was true and the Defendant replied ["]yes["]. The court also asked the Defendant if he had enough time to talk to his counsel about that issue and the Defendant replied ["]yes["].

> The court finds that the Defendant was fully aware that he could not appeal the court's ruling on the C-4 motions. The record reflects that both counsel and the court adequately explained the correct information on this issue to the Defendant during the sentencing hearing. *See Bond v. State*, 695 So. 2d 778, 779 (Fla. 1st DCA 1997). This portion of ground one is also denied.

> . . . .

> In a motion for post-conviction relief, it is the defendant who bears the burden of establishing a prima facie case based on a legally valid claim. *Griffin v. State*, 886 So. 2d 1 (Fla. 2003). Conclusory allegations are not enough to meet this burden. *Id.* Additionally, when alleging ineffective assistance of counsel, the defendant

must prove first that counsel's performance was deficient, and second, that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668 (1984). In the event the defendant fails to satisfy one component, the inquiry ends and the reviewing court need not determine if the defendant satisfied the other. *Maxwell v. Wainwright*, 400 So. 2d 927 (Fla. 1986). In a case where, as here, the defendant pleaded guilty, the defendant must allege that but for counsel's deficient performance, he would have not pleaded and would have insisted on going to trial. *Abernathy v. State*, 761 So. 2d 1217 (Fla. 2d DCA 2000); *Shaffner v. State*, 562 So. 2d 430 (Fla. 1st DCA 1990).

Defendant's probation included a condition that he would complete a six-month residential treatment program with the Salvation Army. Defendant could not immediately enter into the Salvation Army program because bed space was unavailable at the treatment center. Based upon the record, Defendant violated other terms of his probation before a bed became available in the Salvation Army treatment program. Defendant's ability or inability to get into the Salvation Army program was not at issue regarding his violations of probation. Although Defendant may have been unable to get into the Salvation Army program as quickly as he wished, he has not presented a sufficient claim that a deficiency on the part of his counsel caused him to enter a plea that he otherwise would not have entered. Defendant's implication that his inability to immediately enter into the Salvation Army program resulted in the violations of probation is purely speculative. Because Defendant's violation of probation stemmed from violations that were unrelated to the Salvation Army program, he has failed to satisfy the prejudice prong of *Strickland v. Washington*, 466 U.S. 668 (1984). Accordingly, this remaining issue in ground one of Defendant's Motion for Post-conviction relief is denied.

(Respondent's Exhibit 30, p. 3; Exhibit 34, pp. 2-3) (court's record citations omitted)

The record supports the state court's rejection of Hartley's ineffective assistance claim. Even assuming that counsel performed deficiently by misadvising Hartley about his eligibility for the Salvation Army program, Hartley fails to show that, absent the advice, he would have rejected the plea offer of three-years probation and proceeded to trial where he faced ten years imprisonment on each offense upon conviction. Hartley's contention to the

contrary is incredible.  *See Hill v. Lockhart*, 474 U.S. 52 (1985) (conclusory

allegations of ineffective assistance of counsel are insufficient to raise a

constitutional issue); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague,

conclusory, or unsupported allegations cannot support an ineffective assistance of

counsel claim).  Hartley's failure to establish prejudice precludes relief on this

claim of ineffective assistance of counsel because the requirements of *Strickland*

remain unsatisfied.  *See Strickland v. Washington*, 466 U.S. at 691-92.  The state

court's rejection of this claim amounts to neither an unreasonable application of

*Strickland* nor an unreasonable determination of the facts.  *See* 28 U.S.C.

§ 2254(d)(1), (2).

B.      Involuntary plea

        To the extent that Hartley's ground one, liberally construed, asserts an

independent substantive claim that he entered an involuntary plea, he cannot

obtain relief.  "For a guilty plea[7] to be entered knowingly and intelligently, 'the

defendant must have not only the mental competence to understand and

appreciate the nature and consequences of his plea but he also must be reasonably

informed of the nature of the charges against him, the factual basis underlying

those charges, and the legal options and alternatives that are available.'" *Finch v.*

*Vaughan*, 67 F.3d 909, 914 (11th Cir. 1995) (quoting *Stano v. Dugger*, 921 F.2d

---

[7] Because a plea of *nolo contendere* is treated as an admission of guilt, *Hudson v. United States*, 272 U.S.
451 (1926), "the law applicable to a guilty plea is also applicable to a plea of *nolo contendere*." *Carter*
*v. Collins*, 918 F.2d 1198, 1200 n.1 (5th Cir. 1990) (citations omitted).

1125, 1142 (11th Cir. 1991)).  "A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process:  'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea will be upheld on federal review.'"  *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980)).  Although a defendant's statements during a plea colloquy are not insurmountable, "the representations of the defendant [at a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).  Such representations are presumptively trustworthy and considered conclusive absent compelling evidence to the contrary.

Aside from his own self-serving allegation, Hartley presents no evidence substantiating his claim that he involuntarily entered his plea.  During the plea colloquy the state trial judge advised Hartley of the nature of the charged offenses, the factual basis for the plea, the rights Hartley forfeited by entering his plea, and the possible sentences he faced.  (Respondent's Exhibit 1, pp. 7-10)  Hartley averred both that he understood each provision and that he was satisfied with

counsel's representation.[8]  The plea colloquy shows that, after extensive discussion

---

[8]  Hartley averred:

| Court: | You went over the plea form? |
|---|---|
| Hartley: | Yes, ma'am. |
| Court: | Do you understand all the rights outlined in it? |
| Hartley: | Yes, ma'am. |
| Court: | Do you understand that this is a no contest plea? |
| Hartley: | Yes, Judge. |
| Court: | Do you understand by entering this no contest plea that you're giving up each and every one of those rights? |
| Hartley: | Yes, ma'am. |
| Court: | Has anyone threatened or forced you to do this? |
| Hartley: | No, ma'am. |
| Court: | Anyone promise you anything other than what we've said here? |
| Hartley: | No, ma'am. |
| Court: | Are you under the influence of alcohol, drugs, or medication of any kind this morning? |
| Hartley: | No, ma'am. |
| Court: | All right.  [Counsel] has gone over with you what the State needs to prove against you on these cases? |
| Hartley: | Yes, ma'am. |
| Court: | Did you talk about what the State needs to prove? |
| Hartley: | Yes, ma'am. |
| Court: | Are you satisfied with his representation? |
| Hartley: | Very much. |

(continued...)

with counsel, Hartley chose to forego preservation of his right to appeal the

---

| | | |
|---|---|---|
| Court: | Do you understand that you could get up to 10 years? | |
| Hartley: | Yes, ma'am. | |
| Court: | That you score prison? | |
| Hartley: | Right. | |
| Court: | Okay.  And if you violate, you are begging me to send you to prison for a long time; do you understand that? | |
| Hartley: | Yes, ma'am. | |
| Court: | Okay.  And that you're giving up your right to have these trials or raise any of your defenses to these cases in any way by entering this plea; do you understand that? | |
| Hartley: | Yes, ma'am. | |
| Court: | You get this deal in return for not having your trial.  You might have been found not guilty; you might have been found guilty.  If you were guilty, you could get up to 10 years.  If you were found not guilty on both of them, you could go home, obviously. | |
| . . . . | | |
| Court: | Okay.  Now, a factual basis, please. | |
| [Prosecutor]: | Judge, the factual basis for [case number] 01-07257 CFANO, possession of cocaine, was that the Defendant was stopped in Treasure Island on 4/30/2001, in Pinellas County, and they discovered in his vehicle a pipe and several rocks of crack cocaine.  The pipe was still hot to the touch and was located between the front passenger's seat and the console.  Those substances were later tested and revealed to be positive for cocaine. | |
| | On [case number] 01-07687, the Defendant was stopped on 5/7/2001, in Treasure Island, Pinellas County, Florida, for driving while license suspended.  They did an inventory search of the car and Mr. Hartley was arrested on that.  They did find .5 grams of crack cocaine in the jeep that he was driving.  That substance was tested and it did reveal crack cocaine. | |

(Respondent's Exhibit 1, pp. 7-10, 13-14)

rejection of his Rule 3.190(c)(4) motions.[9]  Hartley's sworn statements at the plea

[9]  The state judge before accepting Hartley's plea afforded Hartley ample opportunity to discuss the motions to dismiss with counsel:

| | |
|---|---|
| Hartley: | Judge, I want to say one thing though - - |
| Court: | Okay. |
| Hartley: | - - because I believe in the merit of the C-4 motions in the record.  I would like you to, if you would, the Second DCA, allow a review of them? |
| Court: | Well, I are [sic] - - do I even have them as to both cases? |
| [Counsel]: | Judge, there was a C-4 motion on both of the cases. |
| Court: | Right, and it's my understanding of the case is that the C-4 is not the vehicle by which to challenge this issue. |
| [Counsel]: | Right. |
| Court: | And, therefore, I denied it. |
| [Counsel]: | Right. |
| Court: | Now, I'm not sure you ever gave me written orders on that? |
| [Counsel]: | I did. |
| Court: | It might be a different issue, as we all know, if it went to - - I mean, depending on what the State's evidence was, it might be the kind of case that would be a directed verdict, but I looked at the law pretty carefully, and I don't think the C-4 was the right vehicle. |
| | Now, if you're asking me something, [counsel], regarding his right to, then we just need to be clear about that. |
| [Counsel]: | Judge, if I could have a moment? |
| Court: | Sure. |
| (Thereupon, a discussion was held of the record.) | |
| [Hartley]: | The reason why I brought this to the court's attention, Judge, is I know there were - - which I probably should have, with my attorney, discussed, but I've never seen a traverse - - |

(continued...)

colloquy demonstrate the knowing and voluntary nature of his plea. Hartley

presents no evidence establishing either that he did not want to proceed with his

plea or that counsel coerced him into entering his plea.[10] Hartley's unsubstantiated

[9](...continued)

| | | |
|---|---|---|
| Court: | [Counsel], why don't you sit down and talk to Mr. Hartley for a few minutes. | |
| [Counsel]: | Yes, Judge, I'll do that. | |
| Court: | Thank you. | |

(Thereupon, there was a break in the proceedings.)

| | |
|---|---|
| Court: | [Counsel]? |
| [Counsel]: | Yes, Judge. Judge, I've had a conversation with Mr. Hartley and reminded him that we, in fact, quite some time ago, did go over the traverse that was filed by the State. We understand the court's ruling on those cases. He understands that although we had hoped for a different ruling, that I still felt like there was a very good chance that this court may very well grant a judgment of acquittal in the trial. |
| | However, understanding all of that, it is my understanding from speaking with Mr. Hartley and explaining all the pros and cons of what we may or may not do, that he does not wish to preserve any issue as far as the C-4 motion for purposes of appeal and that it is his desire to resolve this case as discussed here today. |
| Court: | Okay. Is that correct, Mr. Hartley? |
| Hartley: | Yes, ma'am. |
| Court: | Okay. So giving you time to talk to [counsel], you've had as much time as you need to talk to him about that; is that correct? |
| Hartley: | Yes, ma'am. |

(Respondent's Exhibit 1, pp. 10-13)

[10] The conclusion of the plea colloquy shows the state court's recognition of Hartley's favorable plea deal:

| | |
|---|---|
| Court: | Okay. Thank you. Mr. Hartley, I'll accept your plea on both [cases], finding it to be free and voluntary. You're alert and intelligent and represented by |

(continued...)

[10](...continued)

able counsel with whom you have expressed your satisfaction. I will find there is [a] sufficient factual basis for the plea.

I will depart from the guidelines, finding under 948.013 that you're a chronic substance abuser under the *Jones* case. I'll impose three years of drug offender probation, substance abuse evaluation, and treatment. Random urine; likely curfew; reporting once a month, and while unemployed, once a week.

You're to begin six months of residential treatment appropriate at the Salvation Army and successfully enter and complete that program and all aftercare. Between now and the date that there is bed space in that program, you are to attend an AA or NA meeting every single day. You are to make a list of every one of those meetings and take it with you to probation. You should keep a second copy so should you ever need [to] come to court for any reason, you and I aren't arguing about whether you have done that or not, and if the probation officer loses it, you're in bad shape, okay?

Hartley:     Okay.

Court:       . . . . You have 30 days to appeal.

I will tell you, Mr. Hartley, that your case has been disposed of in this way, I believe, because all the parties involved have evaluated the facts. I doubt if the State would not be vehemently objecting and arguing about the basis for it if they [did] not feel that there w[ere] some issues.

So basically what you have done here, sir, is make a judgment based on - - they've got two cases; you would have to win two cases to come anywhere close to this good of a resolution. On the other hand, this also makes you deal with your substance abuse problem, which is quite clear, looking at your record.

So [counsel] has gone to great lengths by filing motions, trying to make these issues apparent, trying to do everything that he can to get you a good resolution. And he did that, he just did it in a way that did not include granting the C-4s. I'm convinced the Second District's decision is the C-4 is not the way to evaluate that. So when the choice is, which I know you had, was you could go to trial and fight each of these cases.

So while the State is not standing up agreeing to this today, they're not doing back flips, and I know it's because they're considering all the facts, too. Do you understand that, sir?

Hartley:     Yes, ma'am.

                                                            (continued...)

- 21 -

allegations in his federal petition fail to overcome the strong presumption of verity afforded his sworn statements made during the plea colloquy. *Blackledge v. Allison*, 431 U.S. at 73-74. Hartley fails to establish that he involuntarily entered his plea.

Accordingly, Hartley's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. Hartley's two motions for a ruling on his federal petition (Docs. 59, 60) are also **DENIED**. The clerk shall enter a judgment against Hartley and close this action.

ORDERED in Tampa, Florida, on March 2, 2012.

*Steven D. Merryday*
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[10](...continued)

| | |
|---|---|
| Court: | Okay. Just so we're all clear on the record and we all understand exactly what happened here happened. So you're getting a huge break based on the issues [counsel] has been able to present . . . to the State, and I'm willing to go along with all this and depart for this reason; I'm willing to do that. It's my decision to do it and I will take the responsibility. |
| | But you should not assume that this would have happened were there not the issues in your cases that there are and that [counsel] has brought to everybody's attention quite clearly. Do you understand me? |
| Hartley: | Yes, ma'am. |

(Respondent's Exhibit 1, pp. 14-18)